Good morning, Your Honor. Your Honors, I'm sorry. I have a cold, so if I give you a problem, just tell me about it. Counsel, would you introduce yourself for the record, please? Oh, I'm sorry. Richard Crossman, on behalf of the appellant for Ruiz Food Products, Incorporated. Your Honor, I think I don't intend upon obviously going over the briefs as we've been stated pretty well in the original brief that was filed and then in the reply brief. The only position statements that I wish to make at this time, and would reserve any time that I have in the balance, is that essentially Catlin's position in this case is that we have the product, the Tornado product that was being distributed by Ruiz. Well, don't you have to show that the Ruiz product was contaminated? No. I disagree with the Court there. Okay. Well, maybe you ought to look at the language. Well, let's start with do you agree that there's no evidence that the Ruiz product  That's not exactly true, I would say, Your Honor. I understand that you argue that you argue an impairment thing, but I'm focusing now on the Is there any evidence that there was any unhealthful matter, that's a scientific term that I just made up, in the Ruiz product? Yes, to the extent that the HPP was found in both cases, in one case with Nestle. No, I'm not talking about other people's product. I'm talking about your client's product. Is there any evidence that there was No, the evidence is that the testing cannot assure No, I understand that. I'm asking, you couldn't completely exclude it, and I suspect that we couldn't completely exclude it if we went today and tested your client's product, because we would be using the same tests. My question is, what evidence do you have that your client's product was contaminated? No evidence other than what was stated, that we can't exclude it because of the HPP product. Isn't it your burden under the policy not to say we can't exclude the possibility, but rather we have to show, more likely than not, that our product was contaminated? Not necessarily. I don't think so. It's our burden under the policy to prove that there's a trigger of coverage under the policy, and the question of whether or not an ingredient, which is a product under the policy, as defined under the policy, does have HPP or does have a contaminant in it would be sufficient, because that was the finding of the FDA, and the USDA confirmed that particular finding. So I don't think we have to prove that the individual product, the tornadoes that were contaminated, had HPP. Is there such a thing as a recall policy? There is such a thing as a recall policy. The record, unless I'm mistaken, doesn't reflect whether or not your client was aware that there was a recall policy. Is that a fair statement? I don't believe the client was, but the record doesn't say one way or the other. Okay. But your position is that because there was at least a chance that there might be contamination in your client's, in the product delivered to your client, that that's enough to trigger this policy? Trigger the accidental contamination portion of the policy. Right. Not necessarily the impairment portion of the policy, because we think that would be more broadly defined. And you think impairment means, in effect, the product is not worth as much as it would have been, even if it's still not contaminated? Actually, it goes even farther than that. The magistrate court, trial court in this case, found that it is known or thought to be dangerous. The USDA and the FDA, in this case, both found, and the USDA found that they're under a reason one, or I've forgotten the exact terminology, that there was a reasonable probability that this was dangerous to people who would consume the product. Is there a finding to that effect, or did they just agree to recall their policy? I mean, there wasn't an administrative agency that held a hearing and made a finding. There was just an agreement between the No, to the contrary. There was a finding, because Where was the finding? Who made the finding? The USDA. Initially, the FDA made a finding upon inspection of the basic plant that there was salmonella all over the plant. Right. And I guess I'm trying to figure out if it's the kind of finding that's binding on courts. In other words, we don't have an administrative proceeding that was contested where somebody said, I've made this finding. An inspector came there, saw there was a problem, and then the recall resulted, right? I can't answer the question of whether it would be binding on the courts or not. But you do know there was no administrative hearing that resulted in an ALJ decision, for example? No, nothing of that sort. What happened in this particular case is the FDA got a report from another one. The existence of salmonella in one of the products, the FDA made the inspection, advised the USDA of the fact that the inspection was made and there was a finding of adulterated product or dangerous, and then the USDA went ahead. The adulterated product, as I understand it, was all at the plant? And it did involve the plant. Right. Most of it. Well, they didn't have a chance to look at anything that wasn't at the plant, right? That's correct. So everything that you're saying, it was at the plant. It seemed to me in your brief that you suggest that the impairment is caused by some diminution in value. Well, actually, we try to do a number of reasons. Well, I was trying to look at that one because, I mean, I don't have anything in the proof here to suggest the product changed at all or that the product was any different than it was generally. True. I don't have anything. So there wasn't any impairment to the product. So I looked at all your arguments and I said, diminution in value. Well, that may happen, but where do I have any, if you will, law or language in the dictionary which cites anything to suggest that impairment equals diminution in value? Well, the Black's Law Dictionary, which was cited by the Magistrate Court, refers to diminution in value. Amongst other definitions... I understand, but I don't necessarily think Black's Law Dictionary, which cites everything that every judge has said about what diminution is, or excuse me, about what impairment is, necessarily applies to this case. So I'm trying to read what does this case, I look at either contamination or impairment, and we're not talking about mislabeling here, that occurs during or as a result of production. That's correct, Your Honor. So I was trying to look very seriously at what impairment is. Now, it seems to me there's another way coverage can occur, not only in the contamination or impairment or mislabeling during the production, but also use or consumption resulting in or would result in bodily injury or sickness. There was no use or consumption that resulted or even would result in this record, right? That's correct, Your Honor. So we've really got to stick with the first. The first is the only thing I can look at for coverage to apply. The accidental contamination? Yes. I would disagree with the court. Well, the accidental contamination, I looked at what the phrase says. There's one way, contamination, impairment, or mislabeling occurring during or as a result of production. Then there's a semicolon. And then there's another. The use or consumption of the product resulted in or would result in the bodily injury. You're suggesting the second didn't occur, so I got to find it in the first, right? Well, I'm not suggesting the second didn't occur. Oh, I thought that's just what you told me. Okay. You didn't sell these products to anyone, so they couldn't have gotten hurt eating them, right? No, but as agreed by the court that heard it and counsel, it was the potential which existed in this case. Oh, but the potential is not there. It doesn't say anything about potential. It says the use or consumption resulted in or would result. I got no evidence it would result in anything, and it didn't result in. So I'm out of that section. But in both in the argument? I don't care what the judge said underneath, because he's making the same determination I am. No, I understand that. I'm just trying to tell you what facts have I got? I got no facts in the second part of this agreement. I only got some idea. Maybe it's impairment in the first part. That's why I focused you in on that. Okay. As regards to the potential argument, first of all, the Catlin conceded at the argument in this case conceded that the second terms would or and I've forgotten the second word that you referred to referred to potential. And in this case, there is a potential of finding because there is salmonella in an ingredient which is a covered product. So your position is that even though you can't show their salmonella in your product, because you can't exclude it, there is a potential of impairment. That's correct. And there is a potential. Their expert conceded that you cannot state that salmonella is still not in the product. In fact, if you take their argument to the ultimate degree, you would have to test it. Well, but isn't the would result in? That's my problem. It's the has resulted or would result in bodily injury, sickness or death. It's not would result in impairment. The would result in occurs in the part of the policy that you, I think, tell Judge Smith you don't have a claim under. Right? That's what I understood. Pardon? Am I wrong about that? No. The would result in occurs in the part that talks about bodily injury, sickness, state disease or health. It doesn't talk about would result in impairment. So for the first part of the policy, the potential isn't enough, is it? Okay. For the first part of the policy, I would say the potential is enough. And what do you base that on? It says which occurs during or as a result of. There's no which would occur or might occur. It just says which occurs. It doesn't seem to me, based on the reading, and I'd be glad to let you look at the language of the policy. The first is contamination, impairment or mislabeling which occurs during or as a result of its production. That's one way for you to have coverage. Correct. The second is that its use or consumption of the product has resulted in, we got no evidence of that, or would result in, we got no evidence of that. So I didn't think you'd really be under the second. I thought if it weren't the first, you wouldn't get there. Okay. As far as the second one is concerned, it is agreed, and there is a record, that salmonella itself would result in bodily injury. Right. So provided that, it's a provided that clause, you still have to satisfy the first clause to get to the second one, do you not? Yes, but the first clause has two things which are particularly relevant. Contamination and impairment. And impairment. And so, but I don't think you can use the would that's in the second clause, which is the proviso, to qualify the first clause which requires that you prove that it occurs. So that's, I think, the question we're both asking. How do you get the would into the first clause? We're not trying to put would into the first clause. Okay. What we're stating is, one, that there was a test for a insured product that showed that there was a contaminant in at least one of those that were distributed along with the circumstances of the plant. You indicated you wish to save some time for rebuttal. Oh, yes. I'm sorry. You may do so. You may reserve the remaining minute. Okay. I will. All right. Good morning. May it please the Court. My name is Linda Sue. I represent the Appellee Catlin Syndicate Limited. Could I ask you to speak just a little louder, counsel? Certainly. Maybe I'll move the microphone a bit, too. Thank you. I wanted to address any questions that the Court may have, but I would like to start by talking about impairment, because it sounds like that may be the issue that the Court might want to hear the most about for me. Certainly one of the issues. Certainly. So as we stated in our brief, the ---- Could it, could it, could you, could they establish contamination simply by the evidence that there was salmonella in a constituent element in the product? No. Why? Because in order, as it was stated by the Court, in this first-party policy, it is the insured's burden to prove that there was a contamination of its insured product, and there is no evidence of that. The product was tested at the basic facility, at the superior facility, and at Reese's If Reese's sold its product to a consumer and the consumer got sick, would this policy cover it? If the ---- If Reese's sold the policy, there was salmonella in the, in the tornadoes. If a consumer had gotten ill and it was shown that the illness was caused because there was salmonella in the product due to the introduction of the product from basic and superior, then we wouldn't be here. I'm using the same set of facts. No more, no more proof. Everything is exactly as it occurs here, but they sell it to somebody and they get deathly ill with salmonella. Is that enough proof that the product was contaminated when it, when it arrived at Ruiz? So the, the hypothetical is that ---- The exact same fact says here, but they don't recall their product. They sell it and people get sick. Do you cover that? I think we would. Without any additional proof that the product was contaminated when it arrived at Ruiz? I think if there was proof that the person who was ill had eaten the Ruiz product and had contracted salmonella poisoning, I think that would be pretty good proof of that the product was contaminated. I think so, too. I don't only think it's proof of the product contaminated. I think it's proof of a duty to defend and a duty to cover under the policy. That's why we're here. Well, actually, this isn't a duty to defend case. I understand, but I'm just saying in insurance language. Right. So if that person had sued Ruiz and if we had provided third-party coverage, there would be a potential for coverage and a duty to defend. I would agree with that. Under those circumstances, would you then cover the cost of recalling or not distributing the remaining tornadoes? I believe that the policy does provide recall costs if it is shown that there is contamination in the first instance. What troubles me, and it may not be dispositive in this case, but what troubles me is that what you're saying to Ruiz is, look, there's a chance there's salmonella in this stuff, but you haven't proved it. Go sell it to somebody and see if they get sick, and if they do, then we'll cover you. Is that? I mean, that's the bottom line, isn't it? No, I'm certainly not suggesting that Ruiz shouldn't have been concerned or shouldn't have followed the FDA requirements and allowed people to eat something that there was a 1 percent possibility of contamination, that they, in being a responsible provider of products, recalled the product. But that doesn't mean that this policy covers that. You suggest in your brief that there's another kind of policy called a recall policy that covers recalls. Is there any evidence in this record that Ruiz was offered that policy or that they knew about it? No, we did not introduce any evidence in the record of what was done during the underwriting process of what Ruiz requested or what their broker may have asked for or if there was a comparison of prices for a recall policy versus a contamination policy. That is not a part of the record. And we interrupted you before when you were talking about impairments. Certainly. So I was going to say that I think we all agree that the words contamination and impairment have to have different meanings in order for the policy to make sense. And the district court certainly agreed with us that, and I think she was correct in doing so, that contamination involves introduction of a foreign substance into the product, whereas impairment is a problem with the product itself, such as the example we gave of a baby food product having lumps in it that might cause a baby to choke. There's no contamination of the product. The product just isn't fit for consumption because it's been impaired. I think it's a stretch of policy interpretation language to say that because a product was recalled that it is therefore impaired. That's something that's external to the product itself that wouldn't make sense if you changed the term recall instead of the term impairment. The policy doesn't make sense because then you wouldn't have the second prong of the provision applying. So I don't think that there's been any, and there's certainly no case law. In fact, all of the case law that's out there that deals with this type of issue is all in favor of the insurer in this case. There's no court that has disagreed that under these circumstances there's no coverage under this accidental contamination type of policy. We have the little lady foods case. We have the fresh express case. We have the limited case. We have the caudal case. All of those cases support our position, and there are no cases to the contrary. We interpret this contract according to California law? Yes. And so those are, although they interpret contracts, none of them are interpreting California, are they? But those interpretations were in States where they used similar rules to interpret their policies, so there really isn't a difference. Is there a covenant of good faith and fair dealing in this particular situation? Every insurance policy includes an implied covenant of good faith and fair dealing. I'm asking a bigger question. If there's no breach of contract, is there, can there be a breach of the covenant of good faith and fair dealing? No, there cannot. Under the California case says that. Because the reason I ask that is here's a situation where you're right on the precipice. I mean, what you're really saying to us is if they'd really sent this out and somebody got damaged, we'd have had coverage. But where they took a good faith effort in trying to prevent that damage, we're out of the coverage and we don't need to pay it. That seems to me to verge a little bit on the breach of the covenant of good faith and fair dealing. I don't, I don't. I mean, it's as if you're saying, well, because you took an action which you should have taken and you were glad you did, you get us out of insurance coverage, so we shouldn't pay. But my client didn't say that. Well, but the facts lead to the same result, whether you said it or you didn't. The problem is in this particular instance, there may not be a breach, but because your insurer, your insured took action as the only reason there wasn't, or there may not have been. I would disagree with that because despite all the testing, there was no finding of salmonella in their product ever. So there's no evidence that the only reason why someone didn't get sick was because they recalled their product. They, according to the evidence that was submitted, they recalled a product that was not contaminated. Just like in the Fresh Express case where the spinach was contaminated with E. coli, but it was another company's spinach. But the insured at issue didn't have that problem. But they recalled their product anyway because they didn't know at the time. Well, I didn't find any California case that it automatically eliminated the covenant of good faith and fair dealing if there was elimination of the breach of contract. That is the law in Idaho, but I couldn't find a California case to suggest that. There is a decision. I recited it on page 50 of our brief. Jordan versus Allstate Insurance Company, 148 Cal App 4, 1062. The case that comes to mind for me is called Love versus Fire Insurance Exchange, although I don't have that citation with me. That case also says the same thing. For example, in Washington, you can have bad faith without breach of contract, but in California, it is more like Idaho. Okay. Anything further, counsel? No. Thank you very much, Your Honor. Mr. Crossman, you have some reserve time. Yes, Your Honor. I will admit something which will alleviate the necessity for the Court to read Love. The law in California is that you cannot have bad faith if there is not a breach of contract. Okay. Very good. The only thing I want to say is that what they argue in this case is that there is no evidence of a trigger under the insurance on the tornado product. They fail to say because the ingredient, which is the HVP, is also defined as a product under the clause, and that because it is handled and distributed and used by the insurer. But is it the insured's product? No. What it says in this thing is the insured, that products are defined as the insured's product, and any ingredients or components. Actually incorporated into the insurance. Actually incorporated in that product. And so the ingredient, which is HVP, is a covered product under the policy. And I may be, I'm close to 14 seconds, but that product is, and it was an indication of, at least in the opinion of the FDA and the USDA, contaminated, and it was also impaired because it wasn't being able, it should not have been used, at least according to those agencies, by, and we recall the product because of that. Anyhow, I believe my time is about up. Well, thank you very much, Mr. Crossman. The case just argued will be submitted for decision, and the Court will adjourn.
judges: O'scannlain, Smith, Hurwitz